352 P.2d 226

W. E. BUECHE, Plaintiff and Respondent,

v.

CHARLES E. CONNER COMPANY, William J. Conner and Charles E. Conner, Defendants and Appellants.

No. 8710.

Supreme Court of Utah.

May 16, 1960.

Robert H. Ruggeri, Moab, Warren C. Horton, Chicago, Ill., for appellants.

Harry E. Snow, Moab, for respondent.

CALLISTER, Justice.

Plaintiff commenced this action to recover the sum of $10.000 which he alleged he had paid to the defendants under a contract and which they, in violation of the terms of said contract, had converted to their own use. The trial court, sitting without a jury, awarded plaintiff a judgment for $5,500 and defendants appeal.

The defendants, William J. Conner, a resident of Moab, Utah, and Charles E. Conner, a resident of Illinois, are brothers and were, at the time they entered into an agreement with the plaintiff, owners of six mining claims located in Grand County, Utah.

The plaintiff, also an Illinois resident, entered into the following letter agreement with the defendants:

"WARREN C. HORTON
"141 West Jackson Boulevard,

"February 24, 1955

"Mr. W. E. Bueche
"8340 So. Manistee Ave.,
"Chicago, Illinois
"Dear Mr. Bueche:

"Relative to the mining and mineral prospecting venture which we have discussed at considerable length, I presented a written proposal dated February 4, 1955 which you rejected with a counter-proposal delivered to Mr. Horton on February 21, 1955. My complete and unqualified rejection of your proposal was communicated to you and Mr. Ziv by my attorney, Mr. Horton, in his letter of February 22, 1955. It has been suggested that we consider the matter anew, there being no existing offers or proposals between us.

"My brother, William C. Conner, and I together own six mining claims in Grand County, Utah, which are evidenced by recorded notices of location filed in the Recorder's Office of the County. These claims were all recorded or re-recorded on September 20, 1954, as Entry Numbers 240, 419 to 240, 424, inclusive. They are respectively known as the Rosetta, Kedzie, Garner, Conlen, Jem and Maypole claims.

"My brother and I expect to complete the location of two additional claims contiguous to those above listed and we hope to obtain full or part ownership in additional claims adjacent or in close proximity thereto.

"All of the above identified mining claims are included in what we shall hereafter refer to as the 'Conner Mining Claims.' It is not intended that any mineral rights which we may hereafter acquire remote from such locations or in other states or territories shall be included in that description. It is intended that there be included therein, and within the venture, any locations within ten miles of the center of said specified locations, or within ten miles of the center of said specified locations, or within the La-Sal mountains.

"I have a full power of attorney from my brother, William J. Conner, to deal with such mining claims on his and my behalf, and to bind him by this proposal to the same extent as if he were to execute it on his own behalf.

"The 'Conner Mining Claims' are located in a region in Utah in which gold, silver, uranium, and other minerals in rich deposits have been found. The presence of such minerals on the 'Conner Mining Claims' and the likelihood that they will be found thereon has been indicated by Gieger counter readings and ore specimens. Whether profitable deposits of such minerals can be found thereon and profitably developed is speculative. It will require the expenditure of time, money and physical efforts to determine that matter. It is my belief that rich mineral deposits, and especially uranium deposits are there in rich quantities.

"I have no desire and my brother has no desire to spend our time prospecting the claims, building roads and tunnels, and developing that property for compensation merely by way of salary or wages. *We need financial assistance, however, for the renting or purchase of equipment, the hiring of labor, personal living expenses while working on the project, and generally to 'grubstake' us for the single purpose of finding and proving the presence of the mineral which I believe are there in rich quantities.* (emphasis ours)

"My brother and I are willing to enter into an agreement with you, which must be based on mutual trust and confidence that we shall use our best efforts to find and prove the presence of such minerals at the least outlay of cash with which the work can be accomplished. *What we must do, however, to accomplish our purpose must necessarily be left to our judgment and final decision.* We are entirely willing to keep anyone associated with us fully informed as to the work being done and the progress being made and we shall be glad to have the advice and counsel of such associates. It will, however, be the complete purpose and intent of my brother and I to devote our efforts to the success of the enterprise for all concerned. (emphasis ours)

"We offer to sell to you five per cent (5%) of all of the net proceeds from this venture if you will pay to me upon the acceptance hereof the sum of Ten Thou-

sand Dollars ($10,000). That sum will be used only for the purpose of the venture and a report of the expenditures from such fund will be made to you from time to time upon your request.

"Since your interest in the venture will be in the proceeds thereof, you will have no personal liability with respect to workmen's compensation or liability insurance and the like. We shall, however, take such steps relative thereto as may be necessary in our judgment for adequate protection. * * *

> "William J. Conner
> by Chas. E. Conner
> His Attorney-in-fact
> "Chas. E. Conner
> Charles E. Conner

"In the Presence of
Warren C. Horton
R. Rzio

"Accepted this 28th day of February, 1955.

> "W. E. Bueche
> "W. E. Bueche

"In the Presence of
Warren C. Horton
R. Rzio

"Receipt of the sum of Ten Thousand Dollars ($10,000) from W. E. Bueche acknowledged, this 28th day of February, 1955.

> "Chas. E. Conner."

Although the pleadings by both parties are somewhat extensive, the trial judge, at the pretrial proceedings and upon agreement of the respective counsel, limited the issues to the question of how much of the $10,000, if any, was spent by the defendants in accordance with the agreement and how much offset, if any, should be allowed to the defendants for work actually done on the eight claims referred to in the agreement.

Upon trial of the case, plaintiff called as adverse witnesses the two defendants and questioned them at length concerning their activities and the work done and expenditures made in connection with the mining claims referred to in the agreement.

According to the defendants, certain necessary equipment was purchased, and that, during the 1955 season when weather permitted, the following was accomplished: four additional claims were located and recorded; surveys were made and recorded; a road to the claims was constructed; the entire group of claims were reprospected; scintillator readings were taken; assays were made; blasting was done; some additional help was employed; trees were cut and cleared away; the portal to a mine shaft was cleared for entry; and the dump in front of the shaft was leveled.

In addition, the defendants testified that money was expended for the living expenses of William J. Conner and for travel incurred by Charles E. Conner between Chicago and Moab.

Plaintiff also called as witnesses Richard Stocks and Gordon Fowler. Stocks testified as to a "bulldozing" job he had performed for defendants for which he had been paid the sum of $608. Fowler testified in effect that he had performed a little work for the defendants and received $150 in payment therefor; that a small amount of work had been done in cleaning out the portal to the mine shaft; and defendants had paid his expenses to Chicago so he could discuss with plaintiff the possibility of a merger of his claims with those belonging to the defendants.

Plaintiff at this point rested and defendants moved to dismiss upon the ground that plaintiff had failed to sustain his burden of proving that the contract had been breached and that the defendants had expended the $10,000 elsewhere than on the claims encompassed within the terms of the agreement.

■ It is evident from the terms of the letter agreement that it created no partnership or joint adventure. The plaintiff merely purchased a 5% interest in the net proceeds for the sum of $10,000. According to the agreement, this money was to be spent by the defendants to develop the claims and that "what we must do, however, to accomplish our purpose must necessarily be left to our judgment and final decision."

■ In our opinion the trial court erred in denying defendants' motion to dismiss at the close of plaintiff's case. Plaintiff did not sustain his burden of proving that the defendants either breached the contract or converted any of the $10,000 to their own use.

The trial court evidently thought that the defendants had spent some of the money improvidently and, by denying the motion to dismiss, placed upon the defendants the burden of accounting and justifying the expenditure of each and every penny of the $10,000.

Defendants, their motion to dismiss having been denied, proceeded to produce evidence on their behalf. They testified to having spent in excess of $10,000 since receiving said sum from the plaintiff. Upon direct and cross examination they testified as to the various expenses incurred and equipment purchased. Their evidence certainly did not prove any breach of the agreement or the conversion of any of the money to their own use.

After both sides had rested, the defendants renewed their motion to dismiss which the trial judge denied. This was error.

Reversed. Costs to appellants.

CROCKETT, C. J., and WADE, HENRIOD and McDONOUGH, JJ., concur.